## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

**CITIZENS PROPERTY INSURANCE
CORPORATION a/s/o DEBORAH
STAROBA,**

      **Plaintiff,**

**v.**                                                          **Case No.  8:10-cv-276-T-30EAJ**

**SIMKAR LLC,**

      **Defendant/Third Party Plaintiff,**

**v.**

**PHILIPS LIGHTING ELECTRONICS
COMPANY d/b/a PHILIPS ADVANCE,**

      **Third Party Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Simkar LLC's motion for summary judgment and motion to exclude Plaintiff's expert Gene Bullington (Dkt. 26), Plaintiff's response in opposition (Dkt. 30), Defendant Simkar LLC's reply (Dkt. 34), and Plaintiff's sur-reply (Dkt. 37). The Court, having reviewed the motions, responses, replies, record evidence, and being otherwise advised in the premises, concludes that Defendant Simkar LLC's motion (Dkt. 26) should be granted in part and denied in part.

## BACKGROUND

This is a products liability case based on theories of negligence and strict liability. The complaint asserts that a fluorescent lighting fixture manufactured by Defendant Simkar

LLC malfunctioned and caused a fire that damaged Plaintiff's property.  Specifically, on September 23, 2009, the residence of Plaintiff Deborah Staroba suffered a fire that Plaintiff claims was caused by a malfunction in Defendant's lighting fixture.  The lighting fixture was located in Plaintiff's master bedroom closet and was installed when the home was built in 2006.  Prior to the fire, Plaintiff and her husband observed the lighting fixture flickering intermittently.  It is unclear in the record the last time the lighting fixture flickered prior to the fire and Plaintiff and her husband do not recall the lighting fixture flickering on the day of the fire.

The record reflects that Plaintiff and her husband used the lighting fixture for lighting in the closet.  The record does not reflect any evidence that the flickering of the light bulb caused or contributed to the cause of the fire.  According to Plaintiff's expert, Gene Bullington, the flickering could have simply meant that the light bulb was nearing the end of its life.

Bullington has testified as an expert in determining the origin and cause of fires, electrical fire causes, and fire burn pattern analysis at the state and federal level.  His opinions have never been excluded or limited by a court and he has never been disqualified to testify as an expert witness.  Bullington has worked as an electrical failure analyst specifically as it relates to fires for over twenty years.  He has conducted over five-thousand fire investigations over the last twenty-seven years, including investigations of electrical equipment potentially involved in causes of fires.  He is a Certified Fire Investigator.  For over twenty years, he has conducted fire cause and origin investigations and evaluated

defects in product manufacturing, design, installation, and use.  Over the past twenty-seven years, he has participated in approximately twenty investigations for which he concluded that a fluorescent lighting fixture caused a fire.

Bullington completed Electronics School and Fire Technician's School through the U.S. Navy.  As a Navy Fire Control Technician, he performed troubleshooting, repair, and design of electro-mechanical systems.  He performed electrical failure work at an electronics shop.  He was trained in electrical failure analysis by the Navy and numerous private educational institutions and private organizations.

Bullington conducted an investigation of the origin and cause of the fire that occurred in Plaintiff's home.  He examined the fire scene, including the master bedroom closet of Plaintiff's home, and he identified, marked, examined, and collected electrical equipment at the loss scene.  He concluded the burn patterns were consistent with the fire having originated in the walk-in closet in the master bedroom.  Bullington also analyzed the Hernando County Fire Rescue Report.

Bullington attended a joint examination of the lighting fixture and the other electrical artifacts taken from Plaintiff's home.  He visually inspected, examined, and microscopically analyzed the lighting fixture's components.  Through this investigation, Bullington identified what he calls an "anomaly" at the severed end of one of the conductors which connected the ballast to one of the lamp sockets.  At the end that would have connected to the lamp socket, the electrical conductor tapered down to 0.91 mm before being completely severed. Bullington identified pitting at the severed end of the conductor consistent with extreme

heating and possible electrical arcing in a very localized location.  He observed the location of the anomaly was within the lamp socket case, an area that the installer or operator of the light fixture would not have accessed.

Bullington determined to a reasonable degree of scientific certainty that the anomaly is consistent with extreme heating and possible electrical arcing occurring at the point where the internal wiring connected to the socket is severed, which is a probable failure of the lighting fixture.  Bullington testified he observed that a portion of the wiring where the anomaly is located is missing because the end of the wire appears broken, not cut.  In his opinion, the anomaly is too localized not to result from the overheating of that area occurring within the lighting fixture, and it is so localized that it cannot result from fire impingement from outside of the lighting fixture.

In sum, Bullington's expert report stated:

It is the conclusion of this writer to a reasonable degree of scientific certainty that the Simkar fluorescent light fixture was the only identifiable potential ignition source for the subject fire within the master bedroom walk-in closet. It is also the conclusion of this writer that to a reasonable degree of scientific certainty the subject fire was caused by an electrical malfunction within the Simkar light fixture which occurred during the normal operation of the fixture. It is further the conclusion of this writer that there was evidence of extreme localized heating and possibly electrical arcing of one conductor at the point where it connected to one of the lamp sockets within the master bedroom walk-in closet light fixture, which represents a potential cause for the subject fire within the light fixture.

(Bullington expert report at 9-10).

Plaintiff's cause and origin expert, Robert Williams, examined the fire scene and concluded that the burn patterns were consistent with the fire having originated at or in the

subject lighting fixture located on the south wall of the master bedroom closet. In his opinion, to a reasonable degree of scientific certainty based on burn pattern analysis, the only identifiable ignition source for the fire within this area of origin is the subject lighting fixture. He also opined to a reasonable degree of scientific certainty that the light switch for the lighting fixture was on when the fire occurred, and that a failure in the lighting fixture caused the fire.

Defendant's expert, Robert House, agreed that the fire originated within the master bedroom closet. However, House concluded, within a reasonable degree of scientific certainty, that the cause of the fire should be classified as undetermined.

This case is at issue upon Defendant's motion to exclude Bullington's expert testimony and motion for summary judgment.

## DISCUSSION

### I.  Defendant's Motion to Exclude Bullington's Expert Testimony

In federal court, expert opinions must meet the admissibility guidelines announced by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, relevant expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify about the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue. *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1257 (11th Cir. 2002) (citations omitted).  District courts have a duty under Rule 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert,* 509 U.S. at 589.

Importantly, although rulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology, it is not the district court's role to make ultimate conclusions as to the persuasiveness of the proffered evidence. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1341 (11th Cir. 2003).  Indeed, a district court's gatekeeper role is not intended to supplant the adversary system or the role of the jury.  *Id.*  Quite the contrary, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.  *Id.*  The "overarching" goal of *Daubert's* gatekeeping requirement is simply to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999).

Defendant challenges Bullington's qualifications and the reliability of his expert opinion. Defendant argues that Bullington is not "an electrician or electrical engineer" and quibbles with Bullington's use of the term "anomaly," arguing that this term is not tantamount to a manufacturing defect.

As an initial point, the Court concludes that Bullington certainly is qualified to give an opinion in this case. As set forth above, Bullington is a Certified Fire Investigator and has conducted over 5,000 fire investigations over twenty-seven years, including approximately twenty investigations in which he concluded that a fluorescent lighting fixture caused a fire. He has training in electrical failure analysis from the U.S. Navy and other organizations. He has testified as an expert at the state and federal level in determining the origin and cause of fires, electrical fire causes, and fire burn pattern analysis.

The Court also concludes that Bullington's expert opinion is sufficiently reliable and would assist the trier of fact. Bullington has sufficient factual and scientific bases to opine that the lighting fixture was on at the time of the fire, that an anomaly existed within the lighting fixture, and that the subject fire was caused by an electrical malfunction within the lighting fixture.

Tellingly, Defendant's own expert, House, agrees with Bullington's opinion that the fire originated within the master bedroom closet. House differs to the extent that he believes the cause of the fire is unknown. However, both experts participated in a joint examination of the lighting components and conducted similar analysis and testing to develop their opinions.

Although Defendant may disagree with Bullington's conclusion regarding an anomaly in the lighting fixture, and whether that is tantamount to a manufacturing defect, that is not the Court's concern at this juncture under *Daubert*. This issue is better addressed on cross-examination and the weight to be afforded that portion of Bullington's testimony should be left to the fact finder. Indeed, to the extent that Defendant believes Bullington's testimony is "ambiguous," vigorous cross-examination should reveal any "shaky" but admissible evidence.

Finally, as discussed in more detail below, Bullington's expert testimony is relevant to the issue of whether Plaintiff is entitled to a *Cassisi* inference.

Accordingly, Defendant's motion to exclude Bullington's expert testimony is denied.

## II.     Defendant's Motion for Summary Judgment

### A.     Summary Judgment Standard

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

### B.    Legal Analysis

Defendant argues that it is entitled to summary judgment on the entirety of Plaintiff's complaint, because Plaintiff cannot establish a defect in the lighting fixture and Plaintiff is not entitled to a *Cassisi* inference. The Court agrees in part.

To prevail in a products liability case under Florida law for either negligence or strict liability, Plaintiff must establish a defect in the subject product, i.e., the fluorescent lighting fixture. *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976); *Wilson v. Danek Med., Inc.*, 1999 WL 1062129, at *4 (M.D. Fla. Mar. 29, 1999); *see also Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999). And expert testimony is necessary to establish the existence of a latent defect. *Id.; see also Humphreys v. Gen. Motors Corp.*, 839 F. Supp. 822 (N.D. Fla. 1993).

Here, the Court agrees with Defendant, and Plaintiff appears to concede, that the record contains no evidence of a design defect or a defect in the warnings and instructions (sounding in negligence or strict liability). Indeed, Bullington testified that he was not asserting an opinion as to a design defect in the lighting fixture or that there were insufficient warnings or instructions related to the lighting fixture. Accordingly, summary judgment is granted in favor of Defendant and against Plaintiff to the extent that Plaintiff's complaint includes a design defect claim or a claim of defect in the warnings and instructions.

The Court concludes that the record contains genuine issues of material disputed facts related to whether Plaintiff established a strict liability manufacturing defect in the lighting fixture. Under Florida law, a manufacturing defect requires (1) a product that "does not conform to its intended design" such that it (2) "fails to perform as safely as the intended design would have performed." Fla. Std. Jury Instr. (Civil) PL 4; *see Husky Indus., Inc. v. Black*, 434 So. 2d 988, 991 n.4 (Fla. 4th DCA 1983). After hearing the evidence, a jury could conclude that Bullington's expert opinion about an "anomaly" and an electrical

malfunction within the lighting fixture establishes a manufacturing defect. However, the Court need not focus on the issue of whether the record reflects evidence of a manufacturing defect because the record reflects sufficient evidence to establish a *Cassisi* inference.

According to *Cassisi,* when a plaintiff proves that a product malfunctioned during normal operation, a legal inference arises that the product was defective in manufacture under strict liability, both at the time of the incident and at the time it was within the supplier's control. *See Cassisi v. Maytag Co.,* 396 So. 2d 1140, 1148 (Fla. 1st DCA 1981); *Beauregard v. Cont'l Tire N. Am., Inc.*, 2011 WL 3252564, at *2 (11th Cir. July 26, 2011); *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1302 (11th Cir. 2011). There are two essential predicate facts for the inference to apply: (1) a malfunction (2) during normal operation. *Cassisi*, 396 So. 2d at 1151.

Here, the record indicates a genuine issue of material fact related to whether the lighting fixture malfunctioned during normal operation. Bullington opines in his expert report and deposition testimony that an anomaly or malfunction existed in the lighting fixture, a point which Defendant appears to concede. Defendant argues, however, that Plaintiff cannot establish "normal operation" as a matter of law. Specifically, Defendant argues extensively that Plaintiff cannot establish normal operation because Plaintiff and her husband ignored the fact that the lighting fixture was flickering intermittently, from the time they moved into their home until some time prior to the fire (and even after they had an electrician inspect the lighting fixture). Defendant focuses on the fact that Plaintiff did not

replace the bulb, adjust the bulb, or request the electrician or home builder to further inspect the lighting fixture after the first inspection did not remedy the flickering problem.

The Court disagrees that Plaintiff's alleged negligence in addressing the lighting fixture's flickering problem somehow bars Plaintiff from establishing normal operation. The record reflects that Plaintiff used the lighting fixture for its intended purpose of providing lighting in the master bedroom closet. And the record is bereft of any evidence suggesting Plaintiff altered the lighting fixture or used it for a purpose other than to provide lighting.

To the extent that Defendant focuses on the lighting fixture's flickering problem and Plaintiff's knowledge of same, those issues can be presented to the jury.

Accordingly, Plaintiff is entitled to a *Cassisi* inference. However, a *Cassisi* inference aids Plaintiff only in establishing a *prima facie* case for jury consideration. *Pantages v. Cardinal Health 200, Inc.,* 2009 WL 2244536, at *2 (M.D. Fla. July 27, 2009). The inference neither entitles Plaintiff to summary judgment nor does it shift the burden to Defendant. *Id.* Indeed, in determining whether the lighting fixture is defective, "the trier of fact will need to consider, in addition to [the material disputed fact of] whether the product malfunctioned during normal usage, other elements such as the amount of time between the sale and [the fire], the product's age, the length of the product's use, the severity of its use, the state of [any] repair[s], its expected useful life and whether it was subjected to any abnormal operations." *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1224-25 (M.D. Fla. 2009) (citing *Cassisi,* 396 So. 2d at 1152).

It is important to note that the instant case is distinguishable from two recent cases before this Court holding that the plaintiff was not entitled to a *Cassisi* inference as a matter of law.  In *Hall v. Sunjoy Industries Group, Inc.*, 764 F. Supp. 2d 1297, 1302 (M.D. Fla. 2011), the plaintiff lacked any expert testimony of a defect in the subject chair.  The record also did not reflect any evidence that the chair "malfunctioned," i.e., did not perform properly under the circumstances.

In *Cannioto v. Louisville Ladder, Inc.*, 2011 WL 2014260, at *3-*5 (M.D. Fla. May 20, 2011), the Court excluded the plaintiff's expert opinions as untimely and unreliable.  The Court then awarded summary judgment to the defendant because the record was bereft of any evidence of a defect in the subject ladder.  *Id.* at *5.  The Court further held that the plaintiffs were not entitled to a *Cassisi* inference because they failed to "prove[] that [the ladder] malfunctioned during normal use."  *Id.* at *3, n.1.  The plaintiffs did not meet the requirements as stated by the Eleventh Circuit that they "'point to evidence that the cause of the accident most probably originated in the product'" and "the malfunction was likely caused by a defect."  *Wolicki-Gables*, 634 F.3d at 1302 (*quoting Worsham v. A.H. Robins Co.*, 734 F.2d 676, 683 (11th Cir. 1984)).  As *Wolicki-Gables* held, summary judgment occurs when a plaintiff, even through expert testimony, "fail[s] to demonstrate that a defect in the [product] 'most probably' caused her injuries and not some other malfunction" or is "unable to exclude alternate possible causes for [the product] to fail."  634 F.3d at 1302.  Thus, *Cassisi* was inapplicable.

Notably, the Eleventh Circuit recently affirmed these principles again in *Beauregard*. The court held that a plaintiff must "prove a malfunction that occurs during normal operation of the product" and *Cassisi* applies "where a 'product malfunctions that would not malfunction but for the defect.'" *Beauregard*, 2011 WL 3252564, at *2 (*quoting Worsham*, 734 F.2d at 683). The court affirmed summary judgment because plaintiff, even with expert testimony, did not "adduce sufficient evidence that there was a 'malfunction' . . . during 'normal operation' of the tire." *Id.* at *3 (*quoting Cassisi*, 396 So. 2d at 1151). On the contrary, the evidence indicated multiple alternate possible causes for the product's failure. *Id.*

Here, as explained above, the record contains sufficient evidence, including expert testimony, to go to the trier of fact for its consideration on whether the lighting fixture was defective. Thus, Defendant's motion for summary judgment on the issues of a strict liability manufacturing defect and whether Plaintiff is entitled to a *Cassisi* inference is denied.

It is therefore ORDERED AND ADJUDGED that, for the reasons set forth herein, Defendant Simkar LLC's motion for summary judgment and motion to exclude Plaintiff's expert Gene Bullington (Dkt. 26) is GRANTED in part and DENIED in part.

**DONE** and **ORDERED** in Tampa, Florida on September 26, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

S:\Even\2010\10-cv-276.msjDkt26.frm